J-S22016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 188 WDA 2023 |

Appeal from the Order Entered January 20, 2023
In the Court of Common Pleas of Erie County
Juvenile Division at No.:  CP-25-DP-0000112-2022

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                          **FILED: July 31, 2023**

Appellant R.B. ("Mother") appeals from the January 20, 2023 order of the Court of Common Pleas of Erie County ("juvenile court"),[1] changing the permanency goal for her son, J.B., born in August 2017 ("Child"), from reunification to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[2]  Appellant first became involved with the Erie County Office of Children and Youth ("Agency") on March 29, 2022, after the Agency received a referral that Child's sibling, B.B., tested positive for THC, opiates, fentanyl and methadone at

_____

[1] Father is not a party to this appeal.

[2] Unless otherwise noted, these facts are taken from the juvenile court's March 15, 2023 Pa.R.A.P. 1925(a) opinion.  **See** Juvenile Court's Opinion, 3/15/23, at 1-8.

birth. Mother's case was opened with the Agency for ongoing services on April 13, 2022, and shortly thereafter, B.B. passed away when Mother fell asleep while feeding him. The Agency continued to assist Mother with referrals for services; however, Mother refused to engage in any services.

On May 16, 2022, Mother tested positive for acetyl fentanyl, fentanyl, fluorofentanyl, norfentanyl, and THC at which time the Agency sought an emergency protective order for the removal of Child from Mother's care. On May 20, 2022, the Agency filed a dependency petition for Child alleging he was a dependent child pursuant to 42 Pa.C.S.A. § 6302. The Agency averred Child was without proper parental care or control and asserted the following:

> On March 29, 2022, the Agency received a referral that at the time of the birth of Child's sibling, Mother tested positive for THC, opiates, fentanyl, and methadone. On April 22, 2022, the Agency received a report that Child's sibling was unresponsive and had been hospitalized after aspirating on formula when Mother fell asleep while feeding him. The sibling was taken off of life support and passed away on May 3, 2022. Subsequently, the Agency arranged a Family Group Decision-making Meeting to address the ongoing concerns and a plan to ensure Child's safety, but Mother refused the meeting. Mother has failed to engage in any of the services the Agency has referred.

> The Agency has concerns about Appellant's substance abuse. Appellant has a history of using heroin, fentanyl, opiates, and THC. Mother has been participating in methadone treatment through Esper. Mother admitted to relapsing on heroin during her pregnancy with Child's sibling as well as using THC. After opening the family for ongoing services, the Agency requested Mother attend a urine screen to alleviate concerns. However, she failed to show for six scheduled one-time urines. Subsequently, Mother did attend a urine screen on May 6, 2022, and the Agency received the results on May 16, 2022. Those results were positive for fentanyl, fluorofentanyl, norfentanyl, and THC.

The Agency has concerns about Mother's mental health. Mother reports she has been diagnosed with bipolar disorder, depression, anxiety, and unspecified mood disorder. She also reported a history of postpartum depression. Mother stated she did not treat her mental health during her recent pregnancy and it is not known if she has since resumed treatment.

Mother has a history with the Agency dating back to 2017 for concerns of substance abuse, when she and Child tested positive for methadone and THC at birth. Mother tested positive for THC, opiates, fentanyl, and methadone at the time of Child's sibling's birth on March 29, 2022. Mother also has an older child who is in the custody of her Father. Mother has a criminal history, including simple assault, forgery, possession of a controlled substance, resisting arrest, retail theft, and public drunkenness.

Dependency Petition, 5/20/22, at 3-4 (minor editing).

On May 25, 2022, following a shelter care hearing at which Mother stipulated, through counsel, to Child's continued Agency care pending an adjudication hearing, a Juvenile Hearing Officer found sufficient evidence was presented to establish that it was not in the best interest of Child to return to the home of Mother. Therefore, the hearing officer recommended that Child remain in kinship care. The juvenile court confirmed those recommendations on May 26, 2022.

An adjudication hearing was held on May 31, 2022, before the juvenile court. Mother **stipulated** to the allegations set forth in the dependency petition. With all interested parties, including Child's guardian *ad litem* ("GAL") in agreement, the matter proceeded to a dispositional hearing and a pre-dispositional summary was admitted without objection. Based on the allegations set forth in the dependency petition, on June 2, 2022, the juvenile

- 3 -

court determined that clear and convincing evidence existed to adjudicate Child dependent pursuant to 42 Pa.C.S.A. § 6302(1). Mother was given the following treatment plan:

> 1. Submit to genetic testing to assist in establishing paternity;
>
> 2. Complete an assessment for her eligibility for Treatment Court. If deemed appropriate, Mother shall participate in all recommended services through treatment court;
>
> 3. Remain drug and alcohol free and participate in random color code urinalysis screenings through Esper Treatment Center;
>
> 4. Obtain gainful employment and provide proof of employment to agency;
>
> 5. Obtain and maintain safe and stable housing and provide proof of residency to agency;
>
> 6. Receive a mental health evaluation and follow any and all recommendations; and
>
> 7. Participate in an agency approved parenting class and demonstrate the ability to appropriately parent her child during visitation.

Order of Adjudication and Disposition, 6/2/22, at 3.

The juvenile court established Child's permanent placement goal as return to parent or guardian concurrent with adoption and scheduled a three-month permanency review hearing for September 26, 2022. The three-month review would enable the court to closely monitor Mother's progress and allow her sufficient time to work on the treatment plan and demonstrate compliance.

At the September 26, 2022, permanency review hearing, the testimony and evidence presented revealed that Mother entered an inpatient

rehabilitation facility in Allenwood, Pennsylvania, from which she was discharged in early July, 2022. Additional testimony revealed that Mother was called to submit to random urinalysis testing seventeen times following her discharge. Mother had eight no-show positive results, and nine positive results for marijuana, even though she does not have a medical marijuana card, fentanyl, norfentanyl, methadone, and EDDP (methadone metabolite). Mother was aware that if the circumstances that led to placement were not alleviated, the Agency would request a goal change to adoption. On October 4, 2022, the juvenile court issued a permanency review order, finding, among other things, that Mother had been moderately compliant with the June 2 permanency plan and had made moderate progress toward alleviating the circumstances that necessitated Child's removal.

The court further ordered Mother to refrain from drugs and/or alcohol; to submit to color code urinalysis screens at Esper Treatment Center; to participate in drug and alcohol services; to continue to participate in and complete Project First Step, Family Engagement through Erie Homes for Children and Adults; continue to participate in and complete Family Behavioral Therapy through Family Services, and complete a psychological assessment with Dr. Peter von Korff; and attend all medical appointments and provider meetings for Child. Mother was permitted to have weekly supervised visitation with Child and was informed that her visits would increase in frequency and/or duration if she complied with the court-ordered services. Child remained in

foster care and another permanency review was scheduled for January 18, 2023. The goal remained unchanged: reunification concurrent with adoption.

On January 4, 2023, the Agency filed the instant motion to change the permanency goal to adoption. In support, the Agency averred Mother "has continued to test positive for illicit substances in her urine screens." Motion, 1/4/23, at ¶ 7. The Agency further claimed that Mother "has also made minimal progress with her treatment plan." *Id.* Thus, given the lack of compliance and failure to alleviate the circumstances of placement, the Agency moved to change the permanency goal for Child to adoption. *Id.* at ¶ 9.

Prior to the second permanency review hearing, held on January 18, 2023, the juvenile court directed Mother to urinalysis testing. Mother tested presumptive positive for amphetamines, cocaine, ecstasy, methadone, THC, fentanyl, morphine and heroin. Mother admitted to a probation officer that she last used fentanyl and cocaine on January 15, 2023 and TCH and methadone on January 18. She was unable to account for the remaining substances in her system. Mother's urinalysis results, as well as the court summary and its accompanying attachments, were made part of the record without objection.

At the permanency hearing, the juvenile court heard testimony that during the review period Mother returned to inpatient rehabilitation in Allenwood, Pennsylvania. However, she left the facility after only six days and continued her drug use. The court summary reflects Mother continued to test

positive for fentanyl throughout the review period.[3]  Significantly, the court heard testimony that Child, who is five years old, is autistic and had "out of control behaviors" requiring him to be placed in shelter care shortly after his removal.  Child remained in shelter care for approximately five months before the Agency was able to set up and provide support for him to assist the foster mother with his care.  Child's behaviors have drastically improved in the foster home.

Additionally, Agency caseworker, Danielle Urban testified that the foster mother was not a pre-adoptive resource and it was her belief that at this point Child needed permanency.  Ms. Urban further testified that the goal change would open the Agency's ability to fund an adoptive resource able to handle Child's needs.

Mother testified that, while she was never in denial of her drug problem, she "was not really telling everybody how much I was really doing to deal with everything."  N.T., Hearing, 1/18/23, at 13.  Mother stated she now understood she needs to deal with the grief from losing Child's sibling (B.B.) and intended to re-enter inpatient rehabilitation the following Monday.  *Id.* at 13-14.  Mother asked the court to give her additional time to work on her treatment and sobriety.

---

[3] Mother claimed that her testing positive for THC could be explained by her alleged possession of a medical marijuana card and prescription for methadone.

At the conclusion of the testimony, the court sought the position of the GAL, who stated as follows.

> Your Honor, I've struggled with this case. I think that because Child has only been in care for eight months—and I know that addiction is hard to beat, and, obviously, Mother's severely, severely addicted. But it's my goal—it's my place, I guess to say at this point what's in the best interest of Child. And I personally have never seen a little boy as crazed, I guess, would be the word as Child when I saw him at Edmund L. Child was like a pinball bouncing off the walls I mean he was just crazed. Now that Child's in a home that is stable that the services are being provided that are hooked up for him, that things are in place for him and he's doing so well—this was a five year old who wasn't potty trained, and now he's potty trained or at least almost fully potty trained.
>
> I just think it's in his best interest that we do change the goal at this time because Mother is still—she's had opportunities to get her drug addiction under control, and I do feel bad. She did lose a baby. I understand that. And there is grief involved with that and I understand that as well. But in the best interest of this Child—and I did talk to the foster mom as well, who is not an adoptive resource. So she doesn't really have anything to gain by sharing a lot of information with me, which, I believe, is—a lot of it is in the resource reporting report. But it indicates that Child is able to function so much better now with some—in the home that he's in. And I just think that's in his best interest to move forward, because he is such a young age, and he does definitely need permanency. Child is only five years old.

*Id.* at 18-19 (minor editing).

Based on the court summary and the attached reports, the testimony at the permanency review hearing, Mother's continued drug use, including the cocktail of substances in her system at the time of the January 18 hearing, and the position of the GAL, the juvenile court issued an order on January 20, 2023, concluding that Mother failed to comply with the permanency plan and failed to alleviate the circumstances leading to the removal of Child from her

care. Significantly, the court found that the change of goal to adoption was in Child's best interest as his needs and life could not be put on hold in the hopes that Mother would be successful in her third attempt at rehabilitation in the eight months since Child had been in care. Mother timely appealed. Although the juvenile court did not direct Mother to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, she still filed one asserting a single claim. In response, the juvenile court prepared a Rule 1925(a) opinion.

On appeal, Mother presents the following issue for our review:

[I.] Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that the concurrent permanency goal of reunification was no longer feasible and changed the goal to adoption[.]

Mother's Brief at 3 (unnecessary capitalization omitted). At the core, Mother claims that the juvenile court abused its discretion in changing Child's permanency goal to adoption because the court failed to consider adequately her efforts at seeking treatment. Specifically, Mother points out that "she was only given eight short months to comply with all aspects of the treatment plan all while dealing with the throws (sic) of an active addition to opiates and the trauma of the loss of her infant son." *Id.* at 10.

It is well settled that the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, governs the placement and custody of a dependent child. *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006). This Court reviews an order regarding a dependent child's placement goal pursuant to an abuse of discretion standard. *See Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019). "In

order to conclude that the [juvenile] court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *In re N.C.*, 909 A.2d at 822-23 (internal citations and quotations omitted).

Our scope of review is of the broadest possible nature, and this Court will ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. *See In re K.J.*, 27 A.3d 236, 241 (Pa. Super. 2011). It is the responsibility of the juvenile court to evaluate the credibility of the witnesses and resolve any conflicts in the testimony. *In re N.C.*, 909 A.3d at 823. Accordingly, "the [juvenile] court is free to believe all, part, or none of the evidence." *Id.* (citation omitted). Thus, this Court affords great deference to the juvenile court's findings of facts that are supported by the record. *See Interest of H.J.*, 206 A.3d at 25. If the record supports the juvenile court's findings, this Court will affirm, even if the record could also support an opposite result. *See id.*

When reviewing the juvenile court's goal change order, we are mindful that the focus of all dependency proceedings, including goal change proceedings, is on the safety, permanency, and well-being of the child and that the best interest of the child must take precedence over all other considerations. *See id.* Pursuant to 42 Pa.C.S.A. § 6351(f), the juvenile court must consider numerous factors, including the extent of progress made

- 10 -

toward alleviating the circumstances which necessitated the original placement. **See** 42 Pa.C.S.A. § 6351(f)(3). If the juvenile court determines that reunification with a parent is not in a child's best interest, the court may change the child's goal to adoption. **See** 42 Pa.C.S.A. § 6351(f.1)(2). A goal change to adoption does not terminate parental rights to a child, but "is a step in that direction." **See Interest of H.J.**, 206 A.3d at 25.

This Court recognizes that "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting[,]" and that an agency should complete the placement process within eighteen months. **Id**. (internal citation and quotations marks omitted). Further, an agency must make reasonable efforts to return a child to a biological parent. **See Interest of T.M.W.**, 232 A.3d 937, 947 (Pa. Super. 2020). However, when an agency's reasonable efforts fail, the agency shall redirect its efforts towards placing the child in an adoptive home. **See N.C.**, 909 A.2d at 823. Once the juvenile court sets a goal to adoption, an agency is no longer required to provide services to a parent. **In re S.B.**, 943 A.2d 973, 978 (Pa. Super. 2008).

Instantly, upon our review of the record, as detailed above, and the relevant case law, we conclude that the juvenile court accurately and thoroughly addressed the merits of Mother's sole argument challenging the goal change to adoption. Juvenile Court's Opinion, 3/15/23, at 13-15. The evidence here established that, for the entire duration of this dependency case, Mother failed to overcome her addiction to narcotics to properly care for

Child who has special needs.  Indeed, her struggle with sobriety was such that she appeared at the January 18 permanency hearing with a cocktail of illicit, and potentially life-threatening, substances in her system.  As the juvenile court explained:

> [Mother] has failed to "alleviate the circumstances which necessitated the original placement" and has demonstrated minimal compliance with treatment plans designed to effectuate reunification.  *See* 42 Pa.C.S.A. § 6351(f).  While [Mother] demonstrated some compliance during the first review period, she was unable to maintain her sobriety.  In fact, the longer the dependency action went on, the worse [her] drug use became.  [Mother's] continued lack of any meaningful period of sobriety demonstrates her inability to safely parent [Child].  As displayed throughout this matter, [Mother] was well aware of what was expected of her in order to safely reunify with [C]hild.  The history of [Mother's] declining compliance with her treatment plan was exhibited throughout the course of this matter.  Despite concerns of [Mother's] abuse of drugs, [she] continued to either not show up for her urinalysis screens or test positive.  Most concerning is that [Mother], who was well aware the Agency was requesting a goal of adoption at her [permanency] review hearing, appeared at the hearing and was able to function, with a cocktail of substances in her system that quite frankly, should have killed her.  This alone demonstrates [her] significant addiction and ultimately her inability to alleviate the circumstances that led to [Child's] removal.

Juvenile Court's Opinion, 3/15/23, at 14.  Given Mother's ongoing addition and consistently positive drug testing results, we agree with the juvenile court that Child's life cannot be placed on hold in the hopes that Mother's "next attempt at rehabilitation will be successful" and that she somehow will

summon the ability to handle the responsibilities of parenting."[4]  *Id.* at 15 (citation omitted).  Moreover, we also agree with the juvenile court's conclusion that Mother "has repeatedly demonstrated that she is not a reliable reunification resource firmly committed to the exclusive health, safety, and wellbeing of [C]hild.  Consequently, based on the cumulative factors, the change of goal to adoption is in [Child's] best interest, and adoption is 'best suited to the children's safety, protection, and physical and moral welfare.'" *Id.* (citations omitted).  Lastly, as the juvenile court found, the evidence herein confirms, a goal change to adoption was in Child's best interest because his "physical and emotional needs are being met in his foster home and changing the goal opens up the Agency's resources to locate an appropriate adoptive home able to address [his] autism and behavioral needs." *Id.* at 14.

Accordingly, in light of the evidence adduced at the permanency hearing, the juvenile court did not abuse its discretion in granting the Agency's motion to change the permanency goal to adoption.  We, therefore, affirm the juvenile court's January 20, 2023 order.  We further direct that a copy of the juvenile court's March 15, 2023 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

---

[4] To the extent Mother suggests that she made recent progress, we decline her invitation to reweigh the evidence or disturb the juvenile court's conclusion that neither Mother's minimal and declining compliance immediately before the goal change, nor her hopes that she could summon the ability to handle parenting responsibilities in the future outweigh Child's need for permanency. *See Interest of H.J.*, 206 A.3d at 25.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/31/2023</u>